wrote to the plaintiff's attorney discussing the case as still an open one, without intimating that the Connecticut administrator had called on him three days before, and had offered to pay the amounts of the notes, and had demanded the policies. This letter was written on the very day that the defendant surrendered the policies to the Connecticut administrator, and paid one of them; but whether it was before or after the conclusion of that transaction does not appear. The defendant, in its answer to the suit in the superior court of Connecticut on policy No. 17,523, does not set up as a defense that a previous action had been begun on the same policy, and was still pending in the courts of the state of New York; the only defense interposed to the Connecticut suit being the one withdrawn in this state,—that Herbert A. Steele died of disease induced by the use of narcotics and alcoholic stimulants.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(31 App. Div. 19.)

In re CANTOR.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

ASSIGNMENT FOR CREDITORS—RIGHTS OF REPUDIATING CREDITORS.

A lien upon funds in the hands of an assignee under a general assignment, secured by virtue of a decree in a creditor's suit holding the assignment void pro tanto, and directing the amount thereof to be paid by the assignee to a receiver, does not apply to a fund representing a subsequent recovery by the substituted assignee against the sureties of the original assignee, for the latter fund is secured under the assignment, and assumes its validity, and therefore does not accrue to the benefit of creditors who have repudiated the assignment, and acted in hostility thereto.

Appeal from special term.

In the matter of the final accounting of Hermann Cantor, assignee. Appeal by a substituted assignee. From an order confirming the report of a referee on final accounting. Affirmed.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

A. Blumenstiel, for appellant Hermann Cantor.
Benno Loewy, for respondents Leopold Weil & Bro.
Benjamin R. Cardozo, for respondent Joseph Ullman.
Winthrop Parker, for respondents L. Einstein and others.

McLAUGHLIN, J. On the 26th of November, 1887, the firm of S. Fleischer & Co. made a general assignment for the benefit of creditors to one Rosenthal. The assignee accepted the trust, and qualified by giving the bond required by statute. Thereafter the firm of Wilmerding, Hoguet & Co. and others, judgment creditors of the assignor, brought suit to set aside the assignment to Rosenthal upon the ground that the same was given with intent to hinder, delay, and defraud the creditors of the assignor. This suit was prosecuted to and resulted in a decree which was entered on the 16th of November, 1888, setting aside the assignment as against the plaintiffs, ap-

pointing a receiver, and directing the delivery to him of all of the assigned property. The decree was thereafter modified by directing the assignee to pay to the receiver the sum of $4,831.47. The assignee having failed to make such payment, he was, on the 1st of April, 1889, by an order entered in a proceeding instituted by another creditor of the assignor, removed, and one Hermann Cantor, the appellant herein, appointed in his place. Rosenthal was then directed to file his accounts, which he neglected to do. It was, however, thereafter determined that Rosenthal was accountable for and chargeable with the sum of $8,309.96, which he was ordered to pay to the substituted assignee, and, he having failed to make this payment, the substituted assignee, by leave of the court, brought an action against the sureties upon his bond to recover the same. The action was prosecuted to, and on the 25th of November, 1892, resulted in, a judgment in favor of the substituted assignee. The judgment was subsequently paid by the sureties, and this was all of the money or property which the substituted assignee received, Rosenthal having absconded, and taken with him all of the money, property, and assets received or held by him as assignee. On the 22d of December, 1892, an order was made upon the consent of the attorneys for Cantor, directing him, as such substituted assignee, to comply with the terms of the decree entered in the suit of Wilmerding and others, so far as certain payments therein mentioned were concerned; and on the day following, he, out of the moneys collected on the judgment against the sureties above mentioned, paid to the receiver the sum of $5,109.36. This payment on the accounting of Cantor was objected to by certain creditors of S. Fleischer & Co., and the referee before whom the accounting was had sustained the objection, and required the substituted assignee to account for such sum. The referee's report was thereafter confirmed by an order of this court, and from that order Cantor has appealed.

The sole question, therefore, presented relates to the ruling of the referee surcharging the accounts of the substituted assignee with the sum of $5,109.36, paid to the receiver above mentioned. The appellant is undoubtedly correct in his contention that the plaintiffs in the Wilmerding suit obtained a lien on the property and assets assigned to Rosenthal, but the money with which the payment here was made was not made out of or derived, either directly or indirectly, from such property or assets. It was money recovered by the substituted assignee from the sureties on the bond of the original assignee. But it is suggested that this money was a substitute for the property and assets originally assigned, and therefore the lien acquired by the decree in the Wilmerding suit attached to it equally with the property and assets originally transferred. That this contention is unsound is settled by the principle declared in the case of People v. Chalmers, 60 N. Y. 154. In that case, as here, certain judgment creditors brought suit to set aside an assignment, and a decree was entered setting the same aside, and directing the assignee to pay a certain sum to the receiver therein appointed, and, he having failed to make the payment decreed, action was brought against the sureties on the assignee's bond by the judgment creditors, and it was

.held that the failure of the assignee to pay to the receiver was not a
.breach of a condition in the bond for which the sureties were liable;
.and in delivering the opinion of the court, Church, C. J., said: .

"The statute was intended to protect the interests of creditors under valid
.assignments made for their benefit, and creates the requisite machinery for
accomplishing that object, and to that end it should be fairly and liberally
construed; but it was not intended to secure the payment of assets upon judg-
ment obtained in hostility to the assignment. The judgments obtained in
behalf of the creditors prosecuting the bond declared the assignment void for
fraud. As to them the assignment was a nullity, and the judgments ob-
tained by them are conclusive. It follows that they were not, and could not
be, prejudiced by the assignment. It never for an instant placed the property
beyond the reach of legal process. They might have levied upon it by
,execution, and the process of injunction and the appointment of a receiver
.were open to them."

Applying this principle to the facts in this case, it necessarily fol-
lows that the money recovered by the substituted assignee from the
sureties upon the bond of the original assignee belongs to the general
creditors of the assignor, to be distributed under the assignment.
It does not belong, or any part of it, to judgment creditors who have
repudiated the assignment, and who have acted in hostility to it.
If I am correct in this conclusion, then it also follows that the plain-
.tiffs in the Wilmerding suit did not have, and never had, any lien on
.or claim to this money, upon the ground that it was a substitute for
the original assets on which they did have a lien. This money was
not substituted for the original assets. It did not grow out of, or
arise from the use of, the assigned estate in any way. It came into
existence simply and solely by reason of the liability of Rosenthal
.to perform his duties under the assignment, and that liability did not
extend towards or in favor of judgment creditors acting in hostility
,to the assignment. The property transferred to the assignee by the
.assignor was at most an incidental factor in creating the liability
of the sureties. The property assigned determined not the liability
.of the sureties, but simply the extent of it. It was simply because
Rosenthal failed to produce the assets put into his hands, or to ac-
.count for the proceeds thereof, when called upon to do so, that the
.sureties became liable to pay any sum whatever. The rule is well
settled that the interest of a creditor in a trust estate ceases when
the trust fund is wasted or destroyed. The nature of his claim is of
no importance, for, as soon as he becomes unable to trace the property
upon which he had a lien, that moment he assumes the position of a
common creditor. Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504.
Therefore the preferential right of Wilmerding, Hoguet & Co. and
others against the property transferred to Rosenthal ceased when the
latter absconded, and took with him the assigned estate. This fact
would have enabled them to share with the other creditors acting un-
der the assignment in the fund in question, were it not for the fact
that they have lost that right by repudiating the assignment and ob-
taining the decree which, so far as they are concerned, wholly de-
stroyed it. The fund was not created for their benefit. It must
be applied, under the assignment, "in satisfaction of the debts of the
assignor," because the statute so declares. Laws 1877, c. 466, § 9.

The order amending the decree by directing the substituted assignee to pay to the receiver the sum which he did is of no importance. That order was made upon the consent of the substituted assignee, and without notice to the general creditors, the parties interested in the fund, and in whose interest it was his duty to act.

It follows that the order appealed from was properly made, and must be affirmed, with $10 costs and disbursements. All concur.